# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MUNJED AL MUDERIS, an individual, dba OSSEOINTEGRATION GROUP OF AUSTRALIA; and OSSEOINTEGRATION INTERNATIONAL PTY LTD., an Australian limited company,<br>    Plaintiffs,<br>vs.<br><br>FRED HERNANDEZ, an individual; AMPUTEK, INC., a Nevada corporation; DOE DEFENDANTS I-X, INCLUSIVE; and ROE DEFENDANTS I-X, INCLUSIVE,<br>    Defendants. | NEVADA CIVIL ACTION NO.: No. 2:19-cv-01002-APG-DJA |
| UCHEALTH UNIVERSITY OF COLORADO HOSPITAL,<br>    Non-Party. | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM**

Plaintiffs, by counsel, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), move to compel the production of documents pursuant to a subpoena duces tecum (the "Subpoena")[1] served on non-party UCHealth University of Colorado Hospital ("Hospital") based upon the following grounds:

I. CERTIFICATION UNDER D.C.COLO.LCivR 7.1

Plaintiff's lead counsel in the underlying litigation pending in the United States District Court for the District of Nevada (case number 2:19-cv-01002-APG-DJA) (the

---

[1] A Copy of the Subpoena has been attached as **Exhibit 1** hereto.

"Lawsuit") had multiple, and fairly extensive, telephonic conversations with the Hospital's counsel for the purpose of attempting to resolve the Hospital's objections to the Subpoena. *See* Declaration of Daniel Warner ("Warner Decl.), attached as **Exhibit 2** hereto. Additionally, counsel exchanged several letters discussing ways to potentially resolve the Hospital's objections. *Id.* Unfortunately, however, the Hospital refused to provide any of the records requested and counsel was unable to reach an agreement. *Id.*

II. <u>MOTION TO COMPEL</u>

    A. <u>Introduction; Background</u>

        1. Osseointegration refers to a direct structural and functional connection between ordered, living bone and the surface of a load-carrying implant.

        2. For decades the osseointegration surgical procedure has been used to vastly improve the quality of life of amputees.

        3. Although located in Australia, Plaintiff Munjed Al Muderis ("Al Muderis") is a world-renowned orthopedic surgeon who developed the new generation of implant, osseointegration prosthetic limb ("OPL"), which addresses several issues previously faced by patients. The OPL implant is a registered medical device approved by the Therapeutic Goods Administration of Australia for use in Australia.

        4. In the United States, the OPL procedure remains extremely rare. The OPL medical implant devices are highly regulated by the U.S. Food and Drug Administration ("FDA"). Upon information and belief, no OPL medical implant has obtained premarket approval by the FDA.

5. Defendant Fred Hernandez ("Hernandez") was one of Al Muderis' first patients to travel from the United States to Australia to have the OPL procedure.

6. After having the OPL procedure performed, Hernandez began to widely publicize on Facebook.com and other social media his personal experience with the OPL procedure.

7. Hernandez was thrilled with the procedure and thus was inspired to share his knowledge and experience with other amputees.

8. Shortly thereafter, Hernandez started to develop a large following on Facebook.com and other social media due to the interest in Hernandez's results and experiences.

9. Al Muderis then began receiving numerous inquiries from amputees in the United States who were interested in traveling to Australia to have the OPL procedure performed.

10. Shortly thereafter, Al Muderis' company, Plaintiff Osseointegration International Pty Ltd. ("OIP"), engaged Hernandez to continue what he was already naturally doing.

11. In or around mid-2018, Hernandez began promoting Plaintiffs' competitors, Amputee Osseointegration Foundation Europe ("AOFE") and MAC Surgical Pty Ltd., who were willing to pay Hernandez referral fees, or a commission, for sales achieved.

12. Since Hernandez stopped performing work for OIP and started working for Plaintiffs' competitors, Hernandez has published on the Internet several false,

misleading and/or defamatory statements for Defendants' own commercial gain. This resulted in Plaintiffs filing the Lawsuit, which includes a claim for false and misleading advertising under the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.[2]

13. After the Lawsuit was filed, in or around September of 2019, Hernandez and his company, Defendant Amputek, Inc. ("Amputek"), began advertising and promoting themselves on the Internet as the "U.S. distributor of the surgical trays and Dutch press fit OTN implants." *See* Post, attached as **Exhibit 3** hereto. Additionally, Defendants were also promoting Dr. Jason Stoneback[3] as "the driving force and sole U.S. surgeon affiliated with the University of Colorado – Denver Osseo program." *See* Post, attached as **Exhibit 4** hereto.

14. In the course of promoting themselves and Dr. Stoneback, Defendants discussed five patients that would be having osseointegration surgery in September of 2019 at the Hospital. *See* Post, attached as Exhibit 4 hereto. Defendants

---

[2] There are five elements to a false advertising claim under the Lanham Act: "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *Sussman–Automatic Corp. v. Spa World Corp.,* 15 F.Supp.3d 258, 269 (E.D.N.Y.2014). Falsity may be established by showing that a statement of fact "was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir.1997) (citation omitted). "When an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public." *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 157 (2d Cir.2007) (citation and internal quotation marks omitted; alterations deleted).

[3] "Dr. Stoneback is the Chief of Orthopedic Trauma and Fracture Surgery at the University of Colorado Hospital. He is also the Director of the Limb Restoration Program." https://www.uchealth.org/provider/jason-stoneback--md-orthopedic-trauma-surgery/ (last visited 03/11/20).

4

also posted pictures of the operating room at the Hospital, along with the names and pictures of the patients. *See* Posts, attached as **Exhibit 5** hereto.

15. It is common knowledge that Premarket Approval ("PMA") under FDA regulations must be obtained before publicly marketing and advertising medical implant devices,[4] and Plaintiffs believe that Defendants have not obtained PMA. Yet, Defendants are targeting their marketing and advertising efforts related to the OTN implants specifically to U.S. residents.

16. Not only are Defendants violating FDA regulations in this regard, Defendants are falsely advertising to U.S. residents that there is "[n]o need to seek surgery overseas any longer" and that "[t]he U.S. has many options today . . . ." *See* Posts, attached as **Exhibit 6** hereto.

17. Defendants are aware that this statement is not true because of the FDA regulations. More specifically, Defendants are aware that "the custom device exemption" contained in § 520(b) of the Food, Drug and Cosmetic Act (FD&C Act) is extremely narrow and only limited to "five units per year of a particular device type" (i.e., "five new *patients* for the patient-focused custom device . . . , assuming all other required elements for the custom device exemption are satisfied") pursuant to § 520(b)(2)(B) of

---

[4] *See* FDA Regulation of Medical Devices, https://fas.org/sgp/crs/misc/R42130.pdf, page 1-3 (last visited 06/04/20) ("A manufacturer must obtain FDA's prior approval or clearance before marketing many medical devices in the United States. . . . Many medical devices, such as plastic bandages and ice bags, present only minimal risk and can be legally marketed upon registration alone. These low-risk devices are deemed exempt from premarket review and manufacturers need not submit an application to FDA prior to marketing.[] In contrast, most moderate- and high-risk devices must obtain the agency's permission prior to marketing.").

the FD&C Act.[5] In essence, presuming that the devices distributed by Defendants are truly custom devices, at best, Dr. Stoneback would be limited to performing only 10 osseointegration surgeries per year (5 above the knee and 5 below the knee).

18. Notwithstanding the Lawsuit, and even though Defendants are aware that this statement is not true, Defendants continue to publish the statement in their advertising and promotional materials. Defendants continue their publications for financial reward and benefit they receive from an international medical device company (OTNI) in distributing OPL medical devices imported from the Netherlands into the United States.

19. Because Defendants have continuously failed and refused to provide any documents or information in accordance with Plaintiffs' discovery requests, Plaintiffs must seek information from third parties, such as the Hospital, to demonstrate that they should be granted the remedies sought, which include injunctive relief and disgorgement of Defendants' profits.

20. The Subpoena seeks information that should demonstrate that the implants used in the surgeries have not been approved by the FDA and fail to meet any applicable exception to obtaining PMA, including, specifically the "custom device exemption." Upon receiving such confirmation, Plaintiffs will be in a position to seek and obtain injunctive relief from the Court regarding Defendants' false and misleading advertising.[6] Additionally, the invoices issued by Defendants to the Hospital will assist

---

[5] Guidance for Industry and Food and Drug Administration Staff, https://www.fda.gov/media/89897/download, page 3-4 (last visited 06/11/20).

[6] Under the Lanham Act, the district courts have jurisdiction to enter an injunction. *See U–Haul Int'l, Inc. v. Jartran, Inc.,* 681 F.2d 1159, 1162 (9th Cir.1982). "[A] competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Harper House,*

Plaintiffs in pursuing the remedy of disgorgement.[7]

    B. <u>Argument</u>

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevancy is broadly construed and discovery should be permitted if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See, e.g., Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001). *But see Johnson v. Kraft Foods North America, Inc.,* 238 F.R.D. 648, 653 (D.Kan.2006) (when a discovery request is overly broad on its face or when the relevancy of the discovery request is not readily apparent, the party seeking discovery has the burden of showing the request's relevance). However, as the Advisory Committee Notes make clear, "the parties and the court [should] focus on the actual claims and defenses involved in the action." *See* Advisory Committee Notes to the 2000 Amendment to Fed. R. Civ. P. 26(b)(1). "Subsumed within the scope of discoverable information under Rule 26(b)(1) is "information that could be used to impeach a likely witness, although not otherwise

---

*Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 210 (9th Cir.1989). "Thus, even if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it sought an injunction." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-46 (9th Cir. 1997).

[7] Once the plaintiff produces evidence regarding the defendant's gross sales, the burden is on the defendant-wrongdoer to demonstrate that its profits are not due to its Lanham Act violation rather than vice-versa. *See Wesco Manufacturing, Inc. v. Tropical Attractions of Palm Beach, Inc.,* 833 F.2d 1484, 1488 (11th Cir.1987) (noting that after the plaintiff proves the defendant's sales, "[t]he burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales.").

relevant to the claims or defenses.' " *Martensen v. Koch*, 301 F.R.D. 562, 570–71 (D. Colo. 2014) (citation omitted).

The Subpoena is very narrowly tailored and only seeks information related to the implants used in the five osseointegration surgeries referenced by Defendants in their promotion discussed above. More specifically, for each of the five patients listed in the Subpoena who had lower limb osseointegration surgery performed by Dr. Jason Stoneback, the Subpoena required the following documents:

> a. All invoices issued by the distributer, supplier or manufacturer to the hospital for orthopedic medical devices and implants used in surgery for [patient];
> b. Prescriptions issued by any surgeon for any custom made orthopedic medical devices and implants used in surgery for [patient];
> c. All product labels of any orthopedic medical devices and implants (custom devices/implants or otherwise) used for [patient];
> d. Surgical reports for [patient] undergoing lower limb osseointegration surgery; and
> e. All patient product sheets recording orthopedic medical devices and implants, including serial numbers and product codes of orthopedic medical devices and implants used in lower limb osseointegration surgery for [patient].

*See* Subpoena, attached as <u>Exhibit 1</u> hereto. Additionally, Plaintiffs agreed to eliminate subpart D, which required surgical reports. Furthermore, even though Defendants published the pictures of the five patients on the Internet, Plaintiffs agreed to redact the name of each patient and other similar information, so it would be uncertain which documents pertained each patient. *See* Warner Decl., attached as <u>Exhibit 2</u> hereto. And Plaintiffs also sought and obtained a protective order that permitted the Hospital to produce the information sought in accordance with 45 C.F.R. § 164.512, which resolved any objections and concerns associated with the Health Insurance Portability and

Accountability Act of 1996, the Health Information Technology for Economic and Clinical Health Act, and their implementing regulations (collectively "HIPAA"). *See* Warner Decl., attached as Exhibit 2 hereto.

However, the Hospital still refused to provide any records on the basis that the Subpoena is overly broad and seeks information that is not relevant to any of Plaintiffs' claim. *Id.* As discussed, the Hospital's objections lack any merit. The Subpoena is narrowly tailored and seeks information directly related to Plaintiffs' Lanham Act claim and the remedies sought. The facial relevancy of the documents sought far exceeds the applicable standard of "any possibility" that the information sought may be relevant to the claim or defense of any party.

C. Conclusion

Based on the foregoing, Plaintiffs respectfully request the Court to grant this Motion and issue an order requiring the Hospital to comply with the Subpoena within ten (10) days from the date of the Court's order.

DATED and RESPECTFULLY SUBMITTED on June 17, 2020.

By: */s/ Daniel R. Warner*
Daniel R. Warner, Esq.
Arizona Bar #026503
**RM WARNER, P.L.C.**
8283 N. Hayden Road, Suite 229
Scottsdale, AZ 85258
Telephone (480) 331-9397
Facsimile (866) 961-4984
dan@rmwarnerlaw.com