IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Miscellaneous Case No. 1:20-mc-00090-RM

MUNJED AL MUDERIS, an individual, d/b/a Osseointegration Group of Australia; and
OSSEOINTEGRATION INTERNATIONAL PTY LTD, an Australian limited company,

    Plaintiffs,

v.

FRED HERNANDEZ, an individual;
AMPUTEK, INC., a Nevada corporation;
DOE DEFENDANTS I-X, inclusive; and
ROE DEFENDANTS I-X, inclusive,

    Defendants.

UCHEALTH UNIVERSITY OF COLORADO HOSPITAL,[1]

    Interested Party.

**ORDER**

This matter is before the Court on Plaintiffs' Munjed Al Muderis d/b/a Osseointegration Group of Australia and Osseointegration International Pty Ltd ("Plaintiffs") motion to compel production of documents by subpoena of a non-party, University of Colorado Hospital Authority ("UCHA"), under Fed. R. Civ. P. 45. (ECF No. 1.) UCHA filed a response to Plaintiffs' motion and Plaintiffs replied. (ECF Nos. 7, 8.) This matter is fully briefed and ripe for decision. Upon consideration of the pleadings, and applicable law, and being otherwise fully advised, the Court finds and orders as follows.

---

[1] Plaintiffs incorrectly named UCHealth University of Colorado Hospital as the non-party from whom they seek production of documents. The non-party recipient of the subpoena is University of Colorado Hospital Authority.

I.  **BACKGROUND**

As it happens, this case is pending before the U.S. District Court for the District of Nevada. The matter before this Court stems from a discovery dispute between Plaintiffs and UCHA regarding the production of certain documents in response to a non-party subpoena the Nevada court issued. (ECF No. 1 at 1.) In the underlying case, Plaintiffs claim Defendants engaged in false and misleading advertising and unfair competition under the Lanham Act by failing to obtain premarket approval from the Food and Drug Administration ("FDA") before marketing the osseointegration prosthetic limb ("OPL") to domestic clients. (*Id.* at 2-5.) The suit alleges that Defendant Hernandez promoted the unapproved implantation device to clients on Facebook. (*Id.* at 6.) These social media posts indicated at least five patients reportedly underwent OPL implantation surgery at UCHA. (*Id.* at 4.) Plaintiffs sought to obtain discovery that established whether these procedures performed at UCHA used the OPL or another unapproved prosthetic device and the cost associated with those devices. (*Id.* at 6.) Plaintiffs claim that Defendants failed to provide documents and information in accordance with their discovery request, which is why they seek the information from non-party UCHA. (*Id.*)

On December 6, 2019, the same day Plaintiffs first served written discovery on Defendant Hernandez in the underlying case, Plaintiffs subpoenaed UCHA. (ECF No. 1-1 at 1-7, 50.) The subpoena requested production of the following documents pertaining to six patients:[2]

  a. All invoices issued by the distributer, supplier or manufacturer to the hospital for orthopedic medical devices and implants used in surgery for [patient];

  b. Prescriptions issued by any surgeon for any custom made orthopedic medical devices and implants used in surgery for [patient];

---
[2] Plaintiffs concede that they inadvertently requested documents for a sixth individual, "Pam," in their subpoena. (ECF No. 8 at 9.) As Defendant Hernandez posted photos of only five patients on Facebook, Plaintiffs have agreed to eliminate their request for information regarding Pam should the Court order UCHA to comply with the subpoena. (*Id.*)

    c. All product labels of any orthopedic medical devices and implants (custom devices/implants or otherwise) used for [patient];

    d. Surgical reports for any [patient] undergoing lower limb osseointegration surgery; and

    e. All patient product sheets recording orthopedic medical devices and implants, including serial numbers and product codes of orthopedic medical devices and implants used in lower limb osseointegration surgery for [patient].

(*Id.* at 1-7.)

After receiving the subpoena and subsequently engaging Plaintiffs by telephone, UCHA sent a letter to Plaintiffs objecting to their document request. (*Id.* at 12-23.) Over the next few months, Plaintiffs and UCHA engaged in discussions regarding the scope of the subpoena. (ECF No. 7 at 4.) Plaintiffs agreed to eliminate subpart d from their request as well as to redact the name of each patient and other similar information and to obtain a protective order from the Nevada court allowing UCHA to produce the documents in accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). (ECF No. 1 at 8-9.) UCHA offered to, in lieu of production of documents, provide an affidavit in response to Plaintiffs' subpoena. (ECF No. 7 at 4.) On the eve of ostensibly reaching the affidavit compromise, the parties broke communication. (*Id.* at 5.) There was no further contact between the parties until approximately three months later when Plaintiffs served UCHA with this motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits discovery of non-parties by subpoena. The scope of discovery under "Rule 45 is the same as set forth in Rule 26(b)(1)." *Premier Election Sols., Inc. v. Systest Labs Inc.*, No. 09-CV-1822-WDM–KMT, 2009 WL 3075597, at *2 (D. Colo. Sept. 22, 2009) (citing Fed. R. Civ. P. 45 Adv. Comm. Note (1970)). Rule 26(b)(1) is broad; it permits parties to "obtain discovery regarding any nonprivileged matter that is relevant

3

to any party's claim or defense." However, courts will not permit a plaintiff to engage in a "fishing expedition" in hopes of snaring information to support his claim. *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002) (citation and quotation omitted). The scope of discovery is further narrowed when subpoenas relate to non-parties as courts have a duty to ensure discovery from non-parties is "closely regulated." *See Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 396 (D. Colo. 1998). In fact, "[c]ourts may refuse discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action, and a few courts even impose a heightened relevancy requirement for nonparty discovery requests." *Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360, 397 (D.N.M. 2018) (citation and quotation omitted). Thus, "the status of a person or entity as a non-party is a factor which weighs against disclosure." *Spacecon Speciality Contractors, LLC v. Bensinger*, No. 09-CV-02080-REB-KLM, 2010 WL 3927783, at *3 (D. Colo. Oct. 1, 2010).

In determining whether to grant a motion to compel non-party production under Rule 45, courts "consider the burden on the nonparty, relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Premier Election Sols., Inc.*, 2009 WL 3075597, at *3 (citation omitted).

### III. DISCUSSION

As a threshold matter, the parties disagree on whether Plaintiffs satisfied their duty to confer before requesting the Court to compel production. This will be addressed before moving to the merits of Plaintiffs' motion.

#### A. Duty to Confer

UCHA argues that Plaintiffs did not engage in meaningful and complete discussion with UCHA prior to filing the instant action as prescribed under D.C.COLO.LCivR 7.1. (ECF No. 7 at 5-6.) In response, Plaintiffs assert that the parties conferred in an effort to reach an agreement

concerning the discovery request but that discussions culminated in an impasse. (ECF No. 8 at 5.)

Pursuant to D.C.COLO.LCivR 7.1, the Court will not consider a motion to compel unless the movant, before filing, has conferred or made reasonable, good-faith efforts to confer with opposing counsel to resolve the dispute by engaging in "meaningful negotiations." *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003). In judging the reasonableness of the movant's good-faith efforts, the Court looks at more than quantity of contacts, as "quality of the contacts is far more important." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (holding that movant did not satisfy his duty to confer where he made four telephone calls and sent two letters before filing a motion to compel).

Plaintiffs assert, and UCHA concedes, that they held multiple telephonic conversations and exchanged several letters with UCHA for the purpose of attempting to resolve UCHA's objections to the subpoena. (ECF No. 1 at 2.) Thus, the parties agree that they were engaged in negotiations before Plaintiffs filed their motion but dispute whether they had, in fact, reached an impasse.

After UCHA filed its initial objections to the document request, the parties communicated by phone on one occasion and by written correspondence on four occasions. (ECF No. 7 at 4-5.) While the quantity of contacts alone is insufficient to show the parties made a meaningful attempt to resolve their dispute, the quality of those contacts shows the parties' efforts were reasonable.

Written communications between the parties indicate that they were on course to address the discovery dispute through UCHA providing an affidavit identifying from which vendors it purchased certain osseointegration devices and the brand of those devices. (ECF No. 1-1 at 51.) Both Plaintiffs and UCHA had made compromises to their original positions. Plaintiffs then

5

added that they required copies of the ordering physician's written requests for custom devices—*i.e.*, a prescription—for each patient identified in addition to the affidavit. (*Id.* at 58.) UCHA subsequently reiterated its willingness to provide an affidavit, without records attached, identifying the vendors and brands of osseointegration devices used by the hospital. (*Id.* at 82.) This concludes negotiation attempts by either party. Based on the quantity and quality of discussion between the parties, the Court finds they engaged in meaningful negotiations as required by local rules prior to Plaintiffs filing their motion.

### B.      Production of Documents

The core of this discovery dispute is that Plaintiffs seek information which UCHA refuses to produce, arguing that it is private, is not relevant to Plaintiffs' claim, places an undue burden on the hospital, and ought to be obtained from Defendants in the underlying suit. Thus, UCHA urges the Court to deny the motion to compel. As an alternative solution, UCHA offers to provide Plaintiffs with an affidavit identifying which vendors it purchases certain osseointegration devices from and the brand of those devices but not disclosing or revealing patient information. For the reasons set forth below, the Court finds the proposed affidavit is a sufficient response to the subpoena.

#### 1.      Undue Burden

First, this discovery request places an undue burden on UCHA. The most efficient manner to obtain the information Plaintiffs seek is from the device distributor. The information requested is not unique to UCHA, and, in fact, could be more readily obtained from Defendants in the underlying suit. If invoices issued to the hospital were from Defendants, then Defendants would be in the best place to produce their own financial records. At the same time, if the invoices Plaintiffs seek from UCHA were not issued by Defendants, then the invoices would be unrelated to Plaintiffs' claim. Additionally, prescriptions Plaintiffs seek for OPL devices would

have been submitted to a distributor, putting Defendants in an apt position to produce documentation. As for product labels, the information on a label relevant to Plaintiffs' claim—such as an identifying serial number, product type, or manufacturer—would be the type of information included in the affidavit UCHA proposes as response to the subpoena. A list of orthopedic medical devices used in implantation surgery and the manufacturer or distributor of those devices should meet Plaintiffs' needs, and any information beyond this is not only superfluous but unnecessarily invasive to patient privacy.

Therefore, placing the onus on UCHA to produce information which would likely jeopardize the confidentiality of non-party patients and their private protected health information, further burdens UCHA. As Plaintiffs argue, in some instances, discovery of medical records of a non-party patient may be necessary and permitted where sufficient safeguards are in place to protect the identity and privacy of the non-party patient. *See e.g.*, *Bennett By & Through Bennett v. Fieser*, 152 F.R.D. 641, 643 (D. Kan. 1994) (permitting discovery of a non-party medical record "only on the condition that the patient's name and other identifying information be deleted" from the record). However, this is not that instance.

*Bennett By & Through Bennett* and cases Plaintiffs cite in support of their position are factually distinguishable because (1) they involved discovery disputes between parties to the lawsuit and (2) plaintiffs in those cases sued the hospital and/or physician for negligence and malpractice. 152 F.R.D. at 642 (plaintiff sought discovery from defendant hospital of non-party patient record in negligence and malpractice suit); *Hartmann v. Nordin*, 147 P.3d 43, 51 (Colo. 2006) (defendant hospital sought discovery from plaintiff husband regarding his wife's medical history); *Belle Bonfils Mem'l Blood Ctr. v. Dist. Court In & For City & Cty. of Denver*, 763 P.2d 1003, 1004 (Colo. 1988) (plaintiff sought discovery from defendant medical center regarding non-party patient records).

Here, Plaintiffs seek to obtain discovery from a non-party hospital of non-party patient medical records in order to prove their claim for false and misleading advertising by a medical device distributor. Plaintiffs have failed to show the Court why private patient information is necessary to prove their claim. Additionally, the case underlying this matter is not a negligence or malpractice suit; it is a case involving unfair business practices where non-party patient information is, at best, ancillary to the alleged claim. Specifically, Plaintiffs allege that Defendant Hernandez made false statements concerning FDA approval of certain implantation devices. In order to prove the falsity of this statement, Plaintiffs would only need to show those devices were not registered with the FDA. The surgical records of the various patients bear no relation to Plaintiffs' claim. As these non-party patients disclosed information to UCHA with an expectation of privacy, their right to confidentiality must be protected.[3] *See Bach v. Hyatt Corp.*, No. 08-CV-00842-REB–KMT, 2009 WL 586130, at *3 (D. Colo. Mar. 9, 2009) ("Medical records contain highly sensitive and private information that does not necessarily need to be disclosed to foster the effective functioning of the adversarial system.").

    2.    <u>Relevancy</u>

Second, only a portion of the information requested is relevant to Plaintiffs' claim. As Plaintiffs concede, they seek only "general information pertaining to the medical device for each patient." (ECF No. 8 at 12.) Indeed, this general information includes devices used in implantation procedures at UCHA and the manufacturer or source of those devices. It does not include patient information which would be found in prescriptions issued by physicians and product labels for implant devices. As previously discussed, disclosing the additional

---

[3] Plaintiffs also argue that Defendant Hernandez' Facebook posts regarding the non-party patients and their surgeries act as waivers to any medical privilege. (ECF No. 8. at, 12.) Plaintiffs provide no authority to support the idea that a third-party social media post somehow abdicates the non-posting patients' rights under federal and state law. Thus, the Court rejects this argument.

information not only compromises patient privacy but also potentially implicates the physician-patient privilege. Moreover, much of this information would be duplicative of the affidavit UCHA offers to produce. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts to limit discovery "where the discovery sought is unreasonably cumulative or duplicative").

Plaintiffs also seek invoices issued by the distributor of medical devices used by UCHA in implantation procedures to prove damages in their claim. This information, however, is not relevant, as any invoices Plaintiffs seek in establishing damages for their disgorgement claim would not reflect profits Defendant earned but merely the hospital's cost for a given device. To establish profit loss, Plaintiffs can, and should, obtain device invoices from a more convenient and pertinent source, namely, Defendants in the underlying suit.

### 3. Discovery in the Underlying Case

Third, the Court is unaware of Plaintiffs' attempts to enforce or compel discovery against Defendants in the primary suit. Notably, Plaintiffs subpoenaed information from UCHA the same day they served first written discovery on Defendant Hernandez. This reveals Plaintiffs failed to exhaust discovery avenues with Defendants before subpoenaing a non-party. Plaintiffs are well aware of the means to enforce unfulfilled discovery requests and should exercise these means with Defendants before embroiling non-parties and thereby the Court. This is especially true here as Defendants likely possess the very information sought from the non-party. *See id.* (stating that courts must limit discovery where the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Ultimately, while a portion of the information sought is relevant to Plaintiffs' claim, they should be able to obtain it from Defendants in the underlying suit. Nevertheless, the Court understands Defendants have been less than cooperative during the discovery process. Thus, the Court finds UCHA shall respond to the subpoena with an affidavit in accordance with parameters

set forth by UCHA during pre-motion negotiations.

      This result adequately addresses the need for the information Plaintiffs request while, hopefully, reducing any future burden on the courts through Defendants' continual nonresponse in the underlying suit.

**4.    CONCLUSION**

      Based on the forgoing and in light of UCHA's position as to relief, the Court ORDERS:

1. Plaintiffs' motion to compel production of documents (ECF No. 1) is GRANTED IN PART and DENIED IN PART;
2. Plaintiffs shall identify to UCHA the particular types of osseointegration devices for which they request information; and
3. UCHA shall respond to the subpoena with an affidavit which (1) identifies from which vendors it purchases osseointegration devices [indicated by Plaintiffs]; and (2) the brand and/or identifying information of those devices [indicated by Plaintiffs] within FOURTEEN (14) days from receipt of device identification from Plaintiffs.

DATED this 13th day of January, 2021.

                        BY THE COURT:

                        RAYMOND P. MOORE
                        United States District Judge